Call our last case for the morning, Hairston v. Hendricks. Oh, yeah. Thank you.  Good morning. Alison Brill, Office of the Federal Public Defender for the District of New Jersey. On behalf of Albert Hairston, I'd like to reserve three minutes for rebuttal. If you could speak up or pull the mic closer. Yes. Mr. Hairston's case presents a straightforward Batson error, although it comes before this court 23 years after a New Jersey state court conviction. If I may, I'd like to begin by quoting what the trial court said in denying the motion for a mistrial as a means of grounding the argument that the state court decision was an objectively unreasonable application of clearly established Supreme Court precedent. The trial court said, defense does not have a right, I don't believe, to put its own place, put himself into the prosecutor's shoes to determine what challenges, in their view, were valid, invalid. The prosecutor has to put forth an argument that he believes will justify his exercise of challenges. That doesn't mean that you have a right to respond to each and every statement he said, he made, based upon what he says. Counsel, you don't have a right to go through each questionnaire with every juror who's sitting and compare them to whose you think were wrongfully excused. Now, all of that follows a very, very, very lengthy death-qualifying individual voir dire process during which, if not all, according to the trial judge, and we have to accept what he says on the record since it's not been refuted, each one having taken one to two hours to question. So what's wrong with what you just read? The judge had sat there over this period of time hearing every question, every answer, watching the expressions and listening to the responses, getting intonations, getting demeanor of the witnesses who answered those questions. So what's wrong with telling defense counsel you don't have a right here to do all of that, simply as a matter of time? It was an extensive voir dire process over 28 days, approximately three months, with days in between. It was so extensive that it's not the kind of situation where the trial court could have had the- That's extraordinary care. That's meticulous development of a record in death-qualifying and selecting an individual voir dire, a jury in a capital case, isn't it? Yes, New Jersey has very good procedure, and it's also the situation where a trial court typically has the ability to determine credibility and recall things being close to the situation. But this was a very extended process. It's very different than the kinds of cases we see where voir dire and then the ultimate selection of the panel have. The difficulty I have is that you just cited the test that is clearly established precedent that there is a violation here. Well, we have Batson in 86, and this trial was in 91. So at the time of this trial, the state of the law was that at the third step, the judge must make a determination as to whether the district attorney, the government, has set forth race-neutral reasons, correct? Yes. Only later do we have case law that says, ah-ha, this has to be an engaging process. The defense has to be able to go into why the reasons aren't right and compare these people with other people who were seated on the jury. We don't have in 1991 the case law that says, oh, flashing red lights. This determination must be made only after an engaging process. And we do have here, although it's clear that the court prevented them from doing the side-by-side comparison, but we do have a determination by the trial court that the reasons were valid and sufficient. So where is the violation of established precedent? As of that date. As of that date. I believe the relevant date is the 1995 appellate division decision affirming the denial of a misdraught. That would be February 21st, 1995. Okay. Even so, what do we have? And Batson itself gives the court language to consider all relevant circumstances. The defense counsel pointed out the most relevant circumstance, the comparative analysis, which has been fleshed out by later courts, but that was an extension of what Batson had said. What about record? I mean, what difference does it make if there isn't a detailed description at this so-called step three where the trial judge determines? And that's the effective word of Batson, determines. Didn't the judge determine? And isn't that enough for us? Step three is the import of Batson. If a prosecutor can rely on anything. Oh, no, it's not. Step three is the least significant in terms of the process. It does not involve any abduction of evidence whatsoever. The two steps are the showing of the prima facie case and the rebuttal of it,  Step three is nothing more than a ruling by the judge. Well, what happened here, if that is the way that Batson works, then Mr. Harrison would never be able to meet his burden even if there was intentional discrimination because his prima facie case was so strong. It was seven out of ten of the peremptory challenges. But the judge found a prima facie case. Yes. Whether you're talking Batson or Gilmore, the judge found a prima facie case. Yes. And the reasons that defense counsel was trying to establish pretexts had nothing to do with the prima facie case, they were about the comparative analysis, which he could not discuss until step two came out. Step three was the important piece in showing that the prosecutor was not applying equally the same principles to his jury selection criteria. Where in Batson do you, what do you rely on as to requiring the defense counsel to be able to do side-by-side comparisons? Penn site, page 96, that the court should consider all relevant circumstances. Batson, of course, was in repudiating swing, was talking about step one, but that was about establishing a prima facie case of discrimination. So what Batson was saying would be relevant to establishing the entire. So the judge should write an opinion setting out all relevant circumstances when he determines pursuant to Batson's step three? In this circumstance where there were factually disputed issues, extremely material to the case. We'll never get to trial. And I think that was clearly the judge's concern. He was rushing him. The judge, I think to give you some support here, I don't know if you need it, but the judge did sort of get curt with defense counsel at this point. You've pointed that up in your brief, right? But do you deny that the judge was engaged at step three of Batson? Do you argue that they never reached step three? Yes. Or it was an inadequate step three evaluation? Which is your argument? That he did not reach step three. Never reached step three. It doesn't actually matter for purposes of. Well, but before you tell me why it doesn't matter, let's parse this out. He didn't reach step. He never reached step three. I'm having trouble with that because aren't we at step three of Batson after the judge has entertained the prosecutor's purported legitimate reasons for striking and the judge looks at defense counsel and says, what do you have to say about that? Aren't we right then in step three of Batson? Yes, in the sense that defense counsel had a limited opportunity to respond. He has stepped out of step two. All right, so your argument then was that the defense lawyer was barred from engaging in a thorough, having an opportunity to say what the defense lawyer needed to say or wanted to say at step three. Yes, and if that is not a step three. Okay, and then where in the record did the defense lawyer object and say, Your Honor, with respect, I need to make a record here. I take exception to the fact that the court is not permitting me to make a record to which I'm entitled. Yes, page 89 in the appendix. Additionally, both Gilmour and Batson do engage in a comparison of the jurors that were excused to the jurors that said that's right in the case. If I'm not allowed, permitted to do that, the record will be inadequate. Defense counsel specifically said you are preventing me from making a record. Batson specifically required trial courts to create the kinds of procedures that make the record. This should have happened in the trial court in 1991. This should not have. Now, wait a minute. Then that does nothing more than create a state law question, doesn't it? Since Batson has made clear that procedurally we're not telling you exactly how to do it. That's a matter for development of state law. We're talking about the Equal Protection Clause. So if the state law is not fulfilling the federal constitutional requirements. I'm still trying to figure actually in response to both questions and answers here. What so-called step three requires? Because I read Batson to say, and I've death-qualified juries before and selected in capital cases. I mean, I do not understand it to involve anything more than a determination by the court. And how is a determination anything more than a ruling? Now, the ruling may be sparse. The ruling may be inadequate for appellate review purposes. But on the face of Batson, what more is required other than a ruling to determine? On the face of Batson, it was very brief on step three. But subsequent decisions. I'm asking what does Batson require? Not what this judge did, but what does it require? Yes. The language of Batson on step three is literally the language of a determination that was interpreted by subsequent Supreme Court cases to mean more than just a determination. And cases that were decided before the appellate division in this case. There are two Third Circuit cases. Jones v. Ryan was 19- Whoa, whoa. Third Circuit cases? Third Circuit cases that- That's not clearly established law by the Supreme Court, which we now know with all these EDPA cases means holdings of the Supreme Court. Yes. The Third Circuit cases inform this court on the reasonableness analysis. Before 1995, federal cases were analyzing the comparative analysis at step three. That is what the defense counsel asked for because in this case, that was what would have shown pretext. On all seven, all seven, we're talking not one, but seven individuals that were removed and never had the opportunity to sit on the jury because defense counsel could not make a proper Batson showing and have the district- I guess you could argue that implicit in the- well, not just implicit in the concept of determination, but specifically in Batson, it places the burden on the defendant. Defendant must show that these facts and any other relevant circumstances raise an inference. And I guess you could say that by putting the burden on the defendant, but then taking the legs out from under the defendant in terms of the ability to meet that burden. Would you comment? Judge Hayden called it a credibility determination on the part of Judge Hayden. Would you characterize it? I mean, in the part of the trial judge. How do you characterize what analysis she followed? I believe that Judge Hayden made a significant factual error, which contributed to her analysis that perhaps because everything was happening all in this one moment, we can describe what the trial court did as a credibility determination. Well, she seemed to assume that the voir dire took place over a few days. Yes, and that was, from my review of the record, completely wrong. Why does that matter? It matters because the credibility determinations are impacted by the amount of time. Well, you know, we require juries to sit there, too, for long periods of time and then make credibility determinations. Yes. So we should somehow not seek to impeach their ultimate determination because of the passage of time, but somehow a judge lacks the retention power to do the same thing. If I could just point to a significant point in the record where we can see where the judge did not make a factual determination, and that was clearly not supported by the record. It was the case of Andrew Bryant, where the prosecutor said About the dissertation? About the dissertation. We asked him about this question. He didn't answer. That was one of the reasons for excusing him. It is one of the days of transcripts that we have available. Very clearly, defense counsel asked a number of questions about the dissertation, which Andrew Bryant candidly answered. And that was a factual error that remained because the judge either didn't want to rule on it, didn't recall what happened. Following up on Judge Rendell's question, what else is there that a judge in a Batson proceeding is doing other than making a credibility determination of the prosecutor's statement of reasons once a prima facie case has been shown? The judge has a full record before him. Here we had juror questionnaires. We had transcripts. The question is, what more? Is there anything else that a judge is doing other than making a determination that the prosecutor has been truthful or forthright? Yes. The judge is looking at the prosecutor's explanations in regard to the record. It's not just, excuse me, it's not simply believing that the prosecutor thinks he was not discriminating. Batson absolutely requires more. It's a difficult inquiry. And to look at the record when we have an extensive record. You're right, defense counsel. Your reasons are better than the prosecutor's reasons. A trial court can say that, hopefully would look at the record and say that your reasons are supported and another person's reasons are not. All right. We'll hear from you. Thank you. May it please the court. Sarah Liebman, Special Deputy Attorney General, acting Union County Assistant Prosecutor, counsel for the appellees. Ms. Liebman, if Judge Hayden did make a credibility determination, or said that the judge made a credibility determination, is it only fair that the judge is going to decide credibility, that he basically give the opportunity for cross-examination of the reasons that counsel suggests? In other words, here, and defense counsel says, I think it's page 91 of the transcript, your honor, the only way I can effectively do this is by, you know, pointing out the differences between these jurors and the ones that were seated. Said to the judge, I have a burden under Batson. I need to fulfill it. This is the only way I can do it. And the judge said, basically, we'll never get to trial if you do that. I'm going to determine that this is fine. Can you really make a credibility determination while you have denied cross-examination to the other counsel? Well, I take your honor's reference to cross-examination, meaning that defense counsel should have been allowed to compare the excused jurors with the sitting jurors. Show the works and the failures and the problems and lay it out as to why they're not believable, if you will. I have – yes. But even though the judge told defense counsel that he shouldn't do that, counsel still – He allowed it anyway, didn't he? He did. What the judge didn't allow was a recess. Correct. Although he did give him some time. He did – counsel asked – Very brief, about ten minutes, five or ten minutes. But what defense counsel wanted was a recess. This has taken so long. We've involved so much process here. I've got to sit down and I've got to review all of this to be able to make a presentation. And that's what the judge – that's what the judge said he wasn't going to allow, gave a very brief recess, and then proceeded to allow defense counsel to make these comparisons. Yes. And defense counsel was – defense counsel made this motion after both sides had said that the jury was satisfactory. It was right after. This wasn't a post-trial issue. It was contemporaneous to the trial. But I might suggest that counsel made this motion. He should have been prepared to make the arguments. They had all – they had gone through. Yeah. How many days and days of this? And there were lots of questionnaires. And, I mean, that's expecting counsel to undertake a Herculean task, basically, on a moment's notice, isn't it? Respectfully, Your Honor, I don't believe that it was a moment's notice, in that this transcript, the date that the motion was made, I believe was October 29th, 1991. There was – Counsel, don't we know from the record that both sides were making extensive notes of their own relative to the answers given by the prospective jurors during the individual voir dire process? Yes. Those notes were referred to during argument at sidebar or wherever it was made. Yes. Right. Or when the challenges were argued. Yes. During the voir dire of the death-qualified jurors. Right. Yes. But the judge said, I don't want you to go into every sitting juror here, compare them to people who have been excused. Right. I mean, he was denying them the basic exercise of comparison. That's the only way counsel had. Again, yes, the judge did say that. However, defense counsel persisted. And did it anyway. And did it anyway. And he says on page 91, he says to the judge, starting its third line down, this is not a case of accepting the – What page are you on? I'm sorry, page 91 of the appendix, which is page 54 of that October 29th transcript, starting at line three. This is not a case of accepting that the prosecutor has valid reasons. You've heard the reasons. Now the court's got to make a determination if they're valid or not. And then he goes on, the only way to do that is to reflect against the people who are not excused. The use of the word valid is kind of an unfortunate use of the term, isn't it? I mean, we're not really talking about validity here, are we? Well, the court said valid. Which sounds like a step two determination. That's the word that's most often used when the court has to determine whether the prosecutor's stated legitimate reasons are, quote, valid. Well, step two, I believe, is more properly characterized. That's the defense side. Yes, more as the prosecutor must give race-neutral reasons. And then the trial court, I'm sorry, the judge then has to determine whether those reasons were pretextual. So there are cases where the prosecutor gave reasons like, I didn't like his facial hair, or I didn't like this. That is a racially neutral reason, but because there may have been other factors, like evidence of systematic exclusion based on race, things of that nature, that could lead the trial court to find that those were pretextual. These reasons, the judge found, not just valid, but they were specifically related to facts in the case. And he mentioned views on the death penalty, family members' history with the criminal justice system, and views on alcoholism. And that was a huge part of the case. Well, what I'm trying to get at when I asked you about the use of the word valid, step two is the point where, after the prima facie case has been demonstrated by the defense, the prosecutor has an opportunity to go back to his notes, as he did here, and set out with respect to each of the challenges what his reasons were. And when I question the use of the word valid, I do it only because I want to ask you the same question I ask your adversary. Is the exercise that occurs, the exercise of determining, it's step three, anything other than a credibility determination by the trial court, that the prosecutor's reasons are, in his words, valid, but that the prosecutor's reasons are truthful, that they're forthright. And also, of course, that they have a basis in the record. Yeah, it is a credibility determination. But the ultimate question- If what we're trying to do is root out discrimination, intentional discrimination, then in many of these cases, in many of these instances, isn't it incumbent upon the trial judge to say, I'm sorry, counsel, I just don't believe you. The record doesn't support the reason that you've mustered here. So that the judge is simply disbelieving the prosecutor in the process. If I understand your honor- It's very simple. All I'm trying to get at is what more is involved in step three than a determination by the judge that the reasons that have been invoked by the prosecutor are, in his words, valid, in my words, truthful, have a basis in the record. That's it. That's what the step three is. Question. You have not cited in your brief, I don't believe, Hardcastle? Coombs? Riley? I believe I cited to Riley. Maybe Riley. And not Hardcastle and Coombs. Don't those cases say that we have to send this back for a new trial? Don't those cases say that without the interactive, the process, without counsel being able to have the ability to compare with those who are on the jury versus those who are stricken, that step three requires that? And without that, it's an unreasonable application and we have-I mean, I was actually surprised to read these cases and how forceful they are as to what our court says must be done in this exact situation. Well, there is some language in those cases, although they are posturally different in that those cases involved post-trial, post-verdict motions. Here we had the motion- Why? I mean, that seems to me to be even-this seems to be even more extreme. The other issue, Your Honors, in- Counsel, assuming that Judge Rendell's question is correct, what is the purpose of permitting the defense to do just that, to make that comparison? What's the purpose of it? There is case law that suggests, or that states more than suggests, that the comparative analysis is relevant to the judge's determination on step three as to whether the prosecutor's reasons are valid, truthful, pretextual. Right. Effectively, what it's doing is impeaching the prosecutor's justification for the strike. Correct. But my question is, isn't-doesn't our case law say that we have to grant a new trial here because that wasn't valid? How do you distinguish those cases in a meaningful way? Well, I think that granting of a new trial is not the only remedy. It could be remanded to the district court. There's no records here. The reason to remand it to the district court would be to allow defense counsel to put-essentially to have the comparative analysis made. Because to say that the judge precluded that the analysis was-the trial judge's ruling was an unreasonable application or contrary to, because we're maintaining that the ADPA deferential standard applies. To say that the step three analysis was not complete or that the step three analysis was an unreasonable application because the defense attorney was not allowed to put that evidence on the record, which again our position is that despite the court telling him not to, he persisted in doing it and all of that evidence was before the trial court, even if he didn't directly acknowledge it. Then the remedy is to remand it for an evidentiary hearing to have that analysis done. And we test that because the notes of testimony have been destroyed. So even if defense counsel said something happened from those notes, there's no way to really test that. Your Honor, I'm not sure that it's been determined that counsel's notes have been destroyed. I know there were- But even so, counsel's notes are basically here saying you can't really- But he could testify. Testify as to what he thought he heard.  It's not going to accomplish anything. Of the notes. In Hart Castle, which is Roth, Sirica, and Nygaard, where the judge took the justification to face value and there was no analysis of credibility, there has to be a- it justifies a new trial. But that wasn't, Your Honor, that wasn't the case. That wasn't what happened in this case. The judge gave- He did. He said we're not going to stay here all day. I'm not going to let you do this. He said it over and over again. Yes, he did say it. But, again, defense counsel persisted in doing it. And in order- and as Judge Hayden said in her opinion, even had counsel been able to establish that there were similarly situated jurors- and, again, similarly situated doesn't mean one factor being the same. And what my adversary did was point out one thing about each juror that was the same maybe as one thing about a remaining juror. That's not the test. But even- Is the test that the court should weigh each side's notions as to what the weight of the evidence shows as to who is a better juror for one side or the other? Clearly not, right? No. I mean, what's the whole purpose of the inquiry other than- and I think Gilmore, actually, at the time said it better- the court has to make the determination and the ultimate burden of proving by preponderance of the evidence that the prosecution exercised its peremptory challenges on constitutionally impermissible grounds of presumed group bias. Yes. So let's assume that we open up this sidebar discussion on Batson to a comparison. You can't just go through an entire comparison. The court has every right to limit, as the court does in any judicial inquiry, what evidence is adduced and how the cross-examination, if that's what it's called, is carried out. It all has to be relevant to presumed group bias. Correct. And that's what, Your Honor, I was just about to say, that ultimately the burden rests upon the defendant to show that the state engaged in purposeful discrimination. And in the cases, in cases where the courts have granted new trial or even remanded for an evidentiary hearing, it wasn't just the comparative analysis. There were other factors that showed that there was discrimination. The egregious case, Miller L. V. Dretke, we don't have anything close, anything close to that in this case. There is nothing the prosecutor gave very specific, very detailed reasons that were related to issues in the case. As the judge said, there is no evidence of racial discrimination. And even had, and again, I still maintain that the defense attorney continued to persist in his comparative analysis. The judge, Judge Triarcy, had presided over all of the voir dires, had reviewed all of the questionnaires. He had all of that information. And yes, he did say, we're never going to get to the trial. But all of that information was before him, and he determined that the prosecutor's reasons were valid, legitimate, and Judge Smith's words, truthful. The defendant or the appellate in this case has not met his burden. Your Honor, I see my time is up. I'm happy to answer any more questions if you have any. Okay, we're fine. Thank you. Thank you. Just a few brief responses. My adversary was saying that the burden was on the defendant and the defendant has not met his burden. The appellate division in affirming the mistrial said, quote, the state carried its burden by articulating clear and reasonably specific explanations. That is how the appellate division affirmed the denial of the motion. The burden of going forward shifted, didn't it? After the prima facie case is demonstrated at step one, you move to step two and the burden of going forward with evidence. Yes, and that's where the appellate. And it was met, according to the court of appeals. Yes, and there's no dispute that step two was met in this case. The question is, was this sufficient under step three? Was a step three finding ever made? I would say the answer is both are no, that there was no step three finding. And if this court finds any finding, it was not sufficient under Batson. What about the fact that counsel here did get in some arguments with respect to several of the jurors and actually proceeded to make those arguments, so did get the chance to make a comparative analysis? He did. He did say a few things. He clearly would have said more because he kept saying, I'm being cut off. So it's not a complete record. He also said, the judge also said, I'm not going to consider it, basically. You don't get to do a comparative analysis. You don't have the right. So the fact that defense counsel is making a record that the judge won't consider. A comparative analysis is not the same thing as adducing evidence at sidebar, if you will, the statements that have been made by prospective jurors during the at least by way of reasonable inference, group bias. Right? I mean, there are limited ways of approaching this inquiry as opposed to comparative analysis which would simply permit a repeat of everything that had been heard during the voir dire process. Agreed. There is. The selective identification of evidence that's relevant for purposes of showing group bias as opposed to much broader evidence that simply go toward demonstrating why defense counsel sees the witness perspective of a juror this way as opposed to how the prosecutor sees witness perspective. Yes. And in the end, the judge is the one making the determination. And the judge did not rule on. And that's classic judicial discretion. Yes. And the judge did not use his discretion. He did not decide, for example, that defense counsel said, the prosecutor just got it wrong. Denise Jones was actually very bad on alcohol. That's how he had it in his notes. The judge never. But assuming that that's true, the only relevancy to that is to, for purposes of showing that the prosecutor is either lying or demonstrating group bias. Right? I mean, that's the only reason for showing that evidence. Otherwise, it's just, he said, he said. Yes. What Judge Marshall said in his concurrence in Batson is very significant, which is that sometimes prosecutors don't even know that they're discriminating. Well, then do you have to call a psychological expert in to testify during the voir dire process? No. As you said, the credibility determination goes by weighing the record. That's what you said. If I just make one more point before time. All right. Judge Rendell, you were discussing Combs and Hardcastle. Another important case in terms of what the remedy would be, if this court finds either that Gilmore didn't meet Batson, that this wasn't enough under EDPA, would be to look at Lark. And Lark would call for a remand back to the district court if the step three determination wasn't made. It might not be for this court to determine, considering that a lot of the record collection happened in the context of the appeal. And Mr. Harrison has been pro se up until this court granted the certificate of appealability. And he would ask to have the opportunity to create the record if it's not enough. In the district court? In the district court. He was pro se in the district court? He was pro se for 13 years while the case sat. My office was not appointed until 2013. So to the extent that my office can be helpful in creating the record further, we would like that opportunity. Well, thank you for taking this on. Thank you. I appreciate it. It's been very helpful to the court. Thank you. Counsel, as a matter of curiosity, we're off the record. Was it an inconvenience for us to switch this argument to today or was it better? Do you know? Is it all right? When we do that, we don't know whether we cause less stress or more stress. We made the mistake of listening.